OPINION

No. 04-03-00765-CV

PARADIGM OIL, INC., Pacific Operators, Inc. and Pacific Operators of Texas, Inc.,
Appellant

v.

RETAMCO OPERATING, Inc.,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2003-CL-14549
Honorable John D. Gabriel, Jr., Judge Presiding
 
Opinion by:  Paul W. Green, Justice
 
Sitting:          Paul W. Green, Justice
Karen Angelini, Justice
Sandee Bryan Marion, Justice
 
Delivered and Filed: December 15, 2004 

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART
           Retamco Operators, Inc. (ROI) sued Paradigm Oil, Inc., Pacific Operators, Inc., and
Pacific Operators of Texas (collectively “Paradigm”), alleging breach of contract and fraud
arising out of an oil and gas lease. In this appeal, appellant Paradigm seeks relief from 
“death penalty” sanctions and a post-answer default judgment entered against it by the trial
court. Paradigm presents four issues for appeal: (1) whether the trial court abused its
discretion in granting the default judgment; (2) whether the trial court’s damage award is
supported by evidence in the record; (3) whether the evidence presented in a prior hearing
is legally and factually sufficient to support the trial court’s award of actual and exemplary
damages; and (4) whether the trial court’s severance order should be reversed if the case is
remanded on liability or damages.
           We affirm the trial court’s decisions regarding issues one and four. However, with
regard to Paradigm’s second issue we reverse and remand the trial court’s decision on
whether the damage award is supported by evidence in the record.BackgroundOn August 5, 1999, ROI sued for breach of contract and fraud, claiming Paradigm and
PNB Securities Corporation failed to pay overriding royalties under a 1984 Purchase
Agreement involving numerous oil and gas leases, many of which were assigned to and
operated by Paradigm. Paradigm answered with a general denial to all of ROI’s claims and
asserted a number of affirmative defenses. ROI commenced discovery immediately, serving
Paradigm with Requests for Disclosure, Interrogatories, and Requests for Production of
Documents on September 14 and 17, 1999. 
           Paradigm did not respond to these September discovery requests. ROI contacted
Paradigm’s counsel in an effort to resolve the problem, but when this proved ineffective, ROI
filed a motion to compel Paradigm’s responses to discovery. The trial court heard the motion
to compel on February 4, 2000, and ordered Paradigm to respond to all of the discovery
requests by February 11, 2000. On February 9, 2000, Paradigm responded to six of the
twelve requests and produced documents in response to only one request.Several months later, on September 21, 2000, ROI served a Second Request for
Production to which Paradigm responded with numerous objections and produced no
documents. In November 2000 and February 2002, ROI served Paradigm with two more
Requests for Disclosure. When Paradigm failed to respond, ROI filed its second motion to
compel. Again, the court ordered Paradigm to respond to discovery, but it did not. Next,
ROI issued notices to take Paradigm’s deposition on March 14 and 15, 2002. Paradigm
neither appeared for the depositions nor made any response to the notices. 
           On March 22, 2002, ROI filed a motion for sanctions against Paradigm, asserting a
pattern of discovery abuse and requesting, among other things, that Paradigm’s pleadings be
stricken and a default judgment be rendered against it. ROI alleged the persons responsible
for the discovery abuse were the owners, directors and officers of Paradigm, not Paradigm’s
attorneys. One week later, Paradigm produced over 2,500 documents, but according to
ROI’s counsel, that production only satisfied one outstanding request. 
           Hearing on the motion for sanctions was postponed in part by the bankruptcy of
another defendant, but was finally scheduled for October 18, 2002. Paradigm was notified
of the hearing but failed to appear. In light of the nonappearance, Judge Peeples ordered
Paradigm’s answer stricken and rendered judgment by default against Paradigm in the
amount of $1,600,000. Paradigm moved for a new trial, alleging that its failure to appear at
the hearing was due to counsel’s mistake in misreading the notice. The trial court granted
Paradigm’s motion, ordered a new trial on ROI’s motion for sanctions, and reset the motion
for sanctions for hearing on January 10, 2003.
           Following the hearing, the trial court signed an order partially granting ROI’s motion
for sanctions and ordered that Paradigm: (1) completely answer all interrogatories, requests
for disclosure, and requests for production no later than January 24, 2003; (2) produce a
witness or witnesses competent to testify on certain designated matters no later than January
31, 2003; and (3) pay ROI $7,500 to reimburse attorney’s fees and court costs. The order
further stated that if Paradigm did not comply with its terms, Paradigm’s answer would be
stricken and a default judgment rendered against it. Paradigm paid the $7,500 sanction.
           On January 24, 2003, the parties agreed to extend the court-ordered deadlines,
requiring Paradigm to answer written discovery on or before January 31, 2003, and produce
witnesses for deposition on February 13, 2003. Four days later, Paradigm’s counsel informed
ROI’s counsel that Paradigm was preparing a large number of boxes of documents
responsive to the document production requests. These documents were not produced by the
January 31, 2003 deadline, allegedly because Paradigm filed for bankruptcy on that date.


 
ROI moved to lift the bankruptcy stay, and an order to that effect was entered June 11, 2003. 
One week later, ROI filed a motion for default judgment asserting that Paradigm did not
comply with the trial court’s sanctions order by the appointed date, and a hearing was set for
July 3, 2003. Before this date, Paradigm offered to produce whatever discovery was owed
ROI, but ROI refused the offer. 
            Following the hearing, Judge Peden granted a default judgment against Paradigm in
the amount of $1,600,000.


 In response, Paradigm did the following: (1) presented post-judgment motions for new trial and for reconsideration; (2) produced everything it believed
ROI sought; and (3) offered to reimburse ROI’s legal fees. The motions were denied and the
default judgment severed from the remaining defendants. Paradigm appealed. 
Discussion
A.       Death Penalty Sanctions                                    
           In its first issue, Paradigm asserts four reasons the trial court abused its discretion in
assessing death penalty discovery sanctions: (1) ROI failed to establish a direct relationship
between the offensive conduct and the sanction imposed because it failed to demonstrate
whether Paradigm or its counsel was responsible for the discovery abuse; (2) the sanctions
granted were excessive because the trial court not only struck Paradigm’s pleadings, but also
precluded it from opposing ROI’s evidence of damages; (3) the sanctions default judgment
against Paradigm prejudices innocent parties against whom ROI seeks to impute Paradigm’s
conduct; and (4) lesser sanctions would not have resulted in any prejudice to ROI where
Paradigm produced all documents and offered to pay ROI’s costs and expenses.  In assessing sanctions for discovery abuse, the trial court may consider everything that
has occurred during the litigation. Berry-Parks Rental Equip. Co. v. Sinsheimer, 842 S.W.2d
754, 757 (Tex. App.–Houston [1st Dist.] 1992, no writ). We review the trial court’s ruling
on sanctions for discovery abuse under an abuse of discretion standard. State Farm Fire &
Casualty Co. v. Rodriguez, 88 S.W.3d 313, 326 (Tex. App.–San Antonio 2002, pet. denied). 
When reviewing a trial court’s imposition of sanctions, any conflicts must be viewed in the
light most favorable to the trial court’s ruling, and all inferences must be made in favor of
the court’s judgment. Herring v. Welborn, 27 S.W.3d 132, 143 (Tex. App.–San Antonio
2000, pet. denied).
           There are three purposes for discovery sanctions: (1) secure compliance with
discovery rules; (2) deter other litigants from similar misconduct; and (3) punish violators. 
Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992). If the court finds a party is
abusing the discovery process in seeking, making or resisting discovery, the court may
impose an appropriate sanction. Tex. R. Civ. P. 215.3. 
           A court may impose sanctions for the failure to fully and completely comply with a
request for discovery. Tex. R. Civ. P. 215. The Texas Supreme Court has stated that this
rule gives “trial courts broad authority to curb [discovery] abuse.” Braden v. Downey, 811
S.W.2d 922, 930 (Tex. 1991). Discovery sanctions imposed must be just under the
circumstances. Tex. R. Civ. P. 215.2(b); Transamerican Natural Gas Corp. v. Powell, 811
S.W.2d 913, 917 (Tex. 1991). When determining whether the sanctions imposed are just,
we consider two factors: (1) whether there is a direct relationship between the offensive
conduct and the sanctions; and (2) whether the sanctions are excessive. TransAmerican, 811
S.W.2d at 917. 
           1. Direct Relationship
           Paradigm argues that ROI failed to establish a direct relationship between the
offensive conduct and the sanction imposed because it failed to demonstrate whether
Paradigm or its counsel was responsible for the discovery abuse. The trial court must at least
attempt to determine whether the offensive conduct is attributable only to counsel, only to
the party, or to both. TransAmerican, 811 S.W.2d at 917. A lawyer cannot shield his client
from sanctions; a party must bear some responsibility for its counsel’s discovery abuses when
it is or should be aware of counsel’s conduct and the violation of the discovery rules. Id. On
the other hand, a party should not be punished for counsel’s conduct in which the party is not
implicated apart from having entrusted to counsel its legal representation. The point is, the
sanction the trial court imposes must relate directly to the abuse found. Id.
           In the present case, the offensive conduct for which the sanctions were imposed was
Paradigm’s non-compliance with prior trial court orders to respond to discovery. This
included the January 10, 2003 order which warned that Paradigm’s pleadings would be
stricken and a default judgment rendered if it did not fully respond to all interrogatories,
requests for disclosure, and requests for production by January 24, 2003, and produce
witnesses for deposition by January 31, 2003. On January 23, 2003, Paradigm served
answers to interrogatories that were signed by Paradigm’s secretary and engineer with the
company. Paradigm then had its own counsel seek time extensions by representing that the
requested documents were on their way, when they were not. There is no suggestion that
Paradigm was not fully aware of their non-compliance or the actions of their counsel. 
Moreover, Paradigm’s counsel had no knowledge that Paradigm was planning to file for
bankruptcy. 
           In addition, the July 3, 2003 default judgment specifically adjudged Paradigm, not its
counsel, guilty of violating the discovery process. The trial court record supports the trial
court’s finding that Paradigm, and not merely Paradigm’s counsel, was responsible for the
discovery abuse. There was no failure of the trial court to determine whether the offensive
conduct was attributable to counsel only, to the party only, or to both. Thus, there is a direct
relationship between the conduct of Paradigm and the resulting sanctions. 
           2. Excessive Sanctions
           Paradigm also argues that the sanctions were excessive because the trial court not only
struck Paradigm’s pleadings, but also precluded it from opposing ROI’s evidence of
damages. Texas Rule of Civil Procedure 243 makes it mandatory that a court rendering
default judgment hear evidence of unliquidated damages, regardless of whether the default
results from the defendant’s failure to answer or from discovery sanctions. Tex. R. Civ. P.
243. Nevertheless, Texas Rule of Civil Procedure 215.2(b) (4) gives the trial court discretion
to render a default judgment as sanctions and to deny the offending party the right to oppose
the damages evidence. Tex. R. Civ. P. 215.2(b) (4); see In re Dynamic Health, Inc., 32
S.W.3d 876, 880 (Tex. App.–Texarkana 2000, orig. proceeding) (striking the offending
party’s pleadings and ordering that at the hearing the party would not be permitted to object
to evidence or cross examine witnesses). 
           In this case, the trial court made a specific finding that Paradigm’s “egregious and
flagrant pattern of discovery abuse” was “directly related to ROI’s claims of damages.” It
is clear that Judge Peeples heard evidence of unliquidated damages pursuant to Texas Rule
of Civil Procedure 243. Although it is true that Paradigm did not have an opportunity to
contest the damages evidence, the trial court has the discretion to prevent a party from
contesting damages as a part of the sanctions imposed. See Tex. R. Civ. P. 215.2(b) (4). In
light of the fact that Paradigm did not attend the October 18, 2002 hearing, the trial court did
not abuse its discretion in relying on the damages testimony presented by ROI. Thus, the
sanctions imposed were not excessive. 3. Prejudice 
           Paradigm argues the default judgment may potentially prejudice innocent parties
because other defendants may be held liable for Paradigm’s wrongdoing but precluded from
contesting its liability. Paradigm says the issue of prejudice is relevant to whether death
penalty sanctions are just. ROI contends the trial court cannot consider potential prejudice
to the remaining defendants because Paradigm has no standing to complain of injuries to
other parties.  
           Standing to sue exists when a party has a sufficient stake in an otherwise justiciable
controversy to obtain judicial resolution of that controversy. Menetti v. Chavers, 974 S.W.2d
168, 171 (Tex. App.–San Antonio 1998, no pet.). On appeal, a party may only complain of
error that injuriously affects that party. Id. at 171; see Pierson v. Houston Indep. Sch. Dist.,
698 S.W.2d 377, 381 (Tex. App.–Houston [14th Dist.] 1985, writ ref’d n.r.e.); see also
Buchele v. Woods, 528 S.W.2d 95, 98 (Tex. Civ. App.–Tyler 1975, no writ). This court has
held that a default judgment against a corporation “does not injure or prejudice” parties
alleged to be alter egos, and that the corporation (here, Paradigm) has no standing on appeal
of the default judgment to raise issues pertaining to other parties’ liability. See Menetti, 974
S.W.2d at 171-72. 
           Alternatively, when determining whether the sanctions imposed are just, we consider
two factors: (1) whether there is a direct relationship between the offensive conduct and the
sanctions imposed, which means that a just sanction must be directed against abuse and
toward remedying prejudice caused the innocent party; and (2) whether the sanctions are
excessive. Transamerican, 811 S.W.2d at 917. In this case, the innocent party is ROI, not
the other defendants in the suit; therefore, potential prejudice to the other defendants is not
a proper consideration in our review of the trial court’s exercise of discretion. The sanctions
imposed by the trial court do not affect anyone but the offending party Paradigm and
therefore are just. 
 
 4. Lesser Sanctions
           Paradigm argues that the imposition of lesser sanctions would not have prejudiced
ROI. Before imposing death penalty sanctions, a court must consider the availability of a
less stringent discovery sanction and whether the lesser sanction would fully promote
compliance. Id. at 917. Discovery sanctions which are so severe as to preclude presentation
of the merits of a case should not be assessed absent a party’s flagrant bad faith or counsel’s
disregard for responsibility of discovery under the rules. Id. Paradigm contends that
although its compliance was late, its tardiness did not preclude a decision on the merits. 
           “Death penalty sanctions” are proper when the record demonstrates bad faith in the
litigation process as a whole as well as the prior imposition of lesser sanctions. See Allied
Res. v. Mo-Vac Serv. Co., 871 S.W.2d 773, 780-81 (Tex. App.–Corpus Christi 1994, writ
denied) (death penalty sanction was just when entire process was marked by delay,
avoidance, and obstruction, and neither compromise, patience, cajoling, fines, nor threats
were successful in achieving compliance). Moreover, the court, in exercising its discretion
to choose the appropriate sanction, is not limited to considering only the specific violation
committed but is entitled to consider other matters which have occurred during the course
of litigation. See Medical Protective Co. v. Glanz, 721 S.W.2d 382, 388 (Tex. App.–Corpus
Christi 1986, writ ref’d). Thus, the court is entitled to consider Paradigm’s repeated
noncompliance with the discovery rules and the discovery orders in issuing sanctions.           
           In the present case, the trial court exhausted lesser sanctions throughout the discovery
process without success. Two orders to compel discovery preceded the ultimate sanction and
were not enough to produce compliance. In addition, the court ordered Paradigm to comply
with ROI’s discovery requests on January 10, 2003, imposed a lesser sanction of $7,500, and
further stated that if Paradigm did not comply with these terms, its answer would be stricken
and a default judgment rendered against it. An order to compel discovery, standing alone,
does not constitute the type of lesser sanction which must be imposed prior to a trial court’s
imposition of ultimate sanctions. See Bair v. Hagans, 838 S.W.2d 677, 681 (Tex.
App.–Houston [1st Dist.] 1992, writ denied). However, an order to compel discovery joined
with a statement by the court that noncompliance with the order would result in dismissal
does constitute the type of lesser sanction which must be imposed prior to a trial court’s
imposition of an ultimate sanction. See Jaques v. Texas Employers’ Ins. Ass’n., 816 S.W.2d
129, 131 (Tex. App.–Houston [1st Dist.] 1991, no writ). 
           The trial court’s death penalty sanction is proper and not excessive in this instance
because the repeated conduct of Paradigm demonstrates bad faith in the litigation process as
a whole. Paradigm’s conduct in this case took place over a period of four years. We hold
the trial court complied with the requirement to render lesser sanctions and did not abuse its
discretion by granting death penalty sanctions when those lesser sanctions failed. 
 
 
 
B.       Evidence in the Record                          
            In its second issue, Paradigm argues the trial court’s damage award is unsupported
by evidence because ROI failed to authenticate and offer into evidence a record of its
damages testimony from the first sanctions hearing on October 18, 2002. 
           A trial court may generally take judicial notice of its own records in a case involving
the same subject matter between the same parties. Escamilla v. Estate of Escamilla, 921
S.W.2d 723, 726 (Tex. App.–Corpus Christi 1996, writ denied). However, the trial court
cannot take judicial notice of testimony from a previous proceeding at a subsequent
proceeding unless the testimony is admitted into evidence at the subsequent proceeding. See
Escamilla, 921 S.W.2d at 726; Muller v. Leyendecker, 697 S.W.2d 668, 675 (Tex. App.–San
Antonio 1985, writ ref’d n.r.e.). Accordingly, in order for testimony at a prior hearing or trial
to be considered at a subsequent proceeding, the transcript of that testimony must be properly
authenticated and entered into evidence. See Escamilla, 921 S.W.2d at 726. 
            The default judgment recites that “[t]he Court takes notice of the evidence previously
introduced and admitted on or about October 18, 2002, in proof of Plaintiff’s claims for
unliquidated damages.” However, during the final July 3, 2003 sanctions hearing, ROI’s
counsel merely represented to Judge Peden that Judge Peeples had previously found damages
in the amount of $1,600,000 following the October 18, 2002 hearing. ROI did not offer a
record of that previous hearing into evidence.  
           There was neither a transcript nor any evidence admitted before Judge Peden to
support the award of $1,600,000. Judge Peden neither heard any damages testimony nor had
any knowledge of the damages evidence previously admitted before Judge Peeples. Under
these facts, Judge Peden can not adequately base a judgment for damages on evidence never
seen nor heard. We hold that the trial court’s damage award is unsupported by evidence in
the record and remand the issue for a new hearing on the amount of damages. We do not
consider Paradigm’s third issue challenging the legal and factual sufficiency of the evidence
to support the trial court’s award of actual and exemplary damages in the amount of
$1,600,000. 
C.       Reversal and Severance
           In its fourth issue, Paradigm contends that if this court reverses the default judgment
on liability or damages, the trial court’s order of severance should also be set aside. 
Paradigm argues severance is inappropriate because ROI seeks to hold all defendants jointly
and severally liable. 
           Texas Rule of Civil Procedure 41 provides that “[a]ny claim against a party may be
severed and proceeded with separately.” Tex. R. Civ. P. 41. A claim is severable if: (1) the
controversy involves more than one cause of action; (2) the severed claim is one that would
be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not
so interwoven with the remaining action that they involve the same facts and
issues. Guaranty Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 658
(Tex. 1990). A trial court’s decision to grant a severance is reviewed for abuse of discretion. 
Id. 
           Following default, a trial court does not abuse its discretion by severing the causes of
action against the defaulted defendants from those against other defendants, even if there is
an alleged “indivisible injury,” or joint and several liability. See Morgan v. Compugraphic
Corp., 675 S.W.2d 729, 733-34 (Tex. 1984); Musey v. Dickinson Social Club, Inc., 466
S.W.2d 84, 87 (Tex. Civ. App.–Houston [1st Dist.] 1971, no writ). ROI could have sued
Paradigm independently; thus, severance is proper in this instance. 
 Conclusion
           We overrule Paradigm’s first and fourth issues. The trial court did not abuse its
discretion in granting the default judgment, death penalty sanctions were justified, and
severance was proper. However, we reverse the judgment as to the amount of damages
awarded and remand the case for a new hearing on damages.
 
                                                                             Paul W. Green, Justice